## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICHARD O. ULLMAN,** | **Civil Action No. 06-3065 (MLC)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **EXPRESS SCRIPTS, INC.,** | |
| **Defendant.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Defendant Express Scripts, Inc.'s ("ESI")
motion to stay all proceedings in this matter pending a resolution of the *Lynch v. NPA* lawsuit
("Lynch" or the "Lynch matter").  The Court has fully reviewed and considered all of the papers
submitted in support of and in opposition to ESI's Motion, and considers same without oral
argument pursuant to FED.R.CIV.P. 78.  For the reasons set forth more fully below, ESI's motion
to stay is DENIED.

**I.      Factual Background**

In April of 2002, ESI purchased Plaintiff Richard O. Ullman's ("Ullman") company,
National Prescription Administrators, Inc. ("NPA").  Pursuant to ESI and Ullman's Stock and
Asset Purchase Agreement ("SAPA"), ESI purchased all of the outstanding stock in NPA and
Ullman agreed to indemnify and hold ESI harmless for all claims asserted by third parties against
ESI arising from NPA's conduct while Ullman owned the corporation.  Pursuant to the SAPA,
ESI and Ullman also agreed to establish an escrow account containing $25,000,000 from the sale
proceeds in order to secure ESI's indemnification rights.

On June 5, 2006, Ullman brought suit against ESI in New Jersey Superior Court alleging breach of contract and breach of fiduciary duty claims arising out of ESI's alleged wrongful prevention of the release of the $25,000,000 held in escrow to Ullman "through the bad faith submission of meritless, defective and exaggerated indemnification claims." (Compl. at ¶ 4). Ullman's case was removed to this Court on July 7, 2006.  ESI denies that the $25,000,000 has been wrongfully withheld and requests that the Court enter a declaratory judgment declaring that ESI is entitled to full and complete indemnification for all losses it has and will suffer as a result of the following actions which have been and/or are being litigated in other courts: the Lynch, CVS, Irwin, Fire Fighters and Hamilton matters.

Since Ullman's Complaint was filed, the parties have engaged in fact discovery as well as dispositive motion practice.  With respect to the parties' cross-motions for summary judgment, the District Court denied Ullman's motion and granted in part and denied in part ESI's motion, dismissing Count IV of the Complaint (i.e., Ullman's breach of fiduciary duty claim) but permitting all of Ullman's remaining claims to go forward.  (Aug. 6, 2009 Order).  ESI now moves to stay this litigation pending the resolution of the Lynch matter.[1]

## II.    Arguments

ESI argues that this case should be stayed pending the resolution of the Lynch matter.  In this respect, ESI argues that in order to preserve judicial economy this matter should be stayed because if the plaintiffs in the Lynch matter are ultimately able to certify a class and recover damages in excess of $25,000,000, then there will be no need to "incur the time and expense of

---

[1]Only the Lynch matter remains pending, the other four: CVS, Irwin, Fire Fighters and Hamilton have been resolved.

reviewing thousands of pages of fee and cost invoices" related to the CVS, Irwin, Fire Fighters and Hamilton matters as the recovery in Lynch will exhaust "the entire amount currently being held in escrow, irrespective of any issues relating to the [other four matters]." (ESI Br. at 3, 7). As such, ESI argues that both it and Ullman will suffer hardship if this matter proceeds to trial before a final resolution in Lynch because "an adverse ruling in Lynch could render all of the work done by the parties and the Court moot." (ESI Reply Br. at 5).

ESI also claims that, until a resolution in the Lynch matter is reached, findings made in this litigation will not result in the release of the funds held in escrow or a final judgment. In this regard, ESI argues that pursuant to the parties' escrow agreement, an indemnification claim such as that brought in the Lynch matter "shall continue to survive and shall remain a basis for indemnity until such claim is finally resolved or disposed of . . . ." (Escrow Agreement at ¶ 4(e)). ESI also notes that pursuant to the escrow agreement, the escrowed funds can only be released after the escrow agent is presented with "a certified copy of a binding and final arbitration award or decree of a court of competent jurisdiction . . . setting forth the amount to be released. (*Id*. at ¶ 5(a)(iv)). Thus, ESI argues that regardless of what this Court finds with respect to how much money ESI is entitled to recoup for the CVS, Irwin, Fire Fighters and Hamilton matters, "such findings will not result in a final judgment resulting in the release of the money being held in escrow" until the Lynch matter is resolved." (ESI Br. at 8).

Indeed, ESI argues that any rulings made by this Court that are "anything other than a complete finding for Ullman, granting Ullman all of the relief he is seeking, the trial will still not result in the release of the money held in escrow." (ESI Reply Br. at 7 (emphasis in original)). In this regard, ESI contends that unless this Court finds that Ullman is entitled to the release of

3

the $25,000,000 being held in escrow because Ullman is not legally responsible under the SAPA to indemnify ESI for the types of claims at issue in the underlying matters, an argument made in Ullman's motion for summary judgment, which was denied by the District Court, then said funds cannot be released until Lynch is decided.  ESI argues that this is true because Ullman's other argument - that ESI forfeited its right to indemnification by its bad faith efforts - would not discharge Ullman's indemnity obligations, but, instead, would only reduce Ullman's liability to ESI by the "extent of the damage he sustained."  (*Id*. at 4).  As such, ESI argues that both it as well as Ullman "may suffer if this case proceeds to trial before a final resolution in <u>Lynch</u>[,]" because an adverse ruling in Lynch would nullify all of the work done here by the parties.  (*Id*. at 5).

ESI further contends that "Ullman's suggested approach to conduct two trials would only compound the hardship."  (*Id*. at 5-6).  First, ESI claims that Ullman's suggestion to bifurcate the trial with his Complaint being tried first and ESI's Counterclaim, which includes claims related to Lynch, being tried second "flies in the face of judicial economy[.]" (*Id*. at 1).  Second, ESI claims that even if the parties were to proceed in such a fashion, unless Ullman is successful in proving that he is not legally responsible under the SAPA to indemnify ESI for the types of claims at issue in the underlying matters, then the approach "will get Ullman nowhere."  (*Id*.) Consequently, ESI argues that a stay is appropriate to avoid the underlying claims being litigated in an uneconomic and inefficient piecemeal fashion, especially since ESI's indemnification claims in Lynch "are contingent on future events that are unknown" and because "this Court cannot adjudicate any issues regarding <u>Lynch</u> without the risk of results that may be inconsistent with what the court ultimately decides in <u>Lynch</u>."  (ESI Br. at 9).

4

Further, ESI argues that a stay is warranted because Ullman will not be prejudiced by the imposition of same.  In this regard, ESI claims that Ullman will not suffer any prejudice or hardship because the money at issue will remain in escrow and continue to accrue interest. Further, ESI claims that "[w]hile having to wait until the <u>Lynch</u> claim is resolved may be an inconvenience for both Ullman and ESI, it does not rise to the level of legal prejudice."  (ESI Reply Br. at 2).  ESI also argues that while Ullman speculates that a stay might result in "some risk of loss of evidence, or the inability to recall facts, or the death of a party[,]" the actual likelihood of such an occurrence "is minimal given that the parties have already engaged in extensive discovery, including the exchange of relevant document and the depositions of relevant witnesses."  (ESI Reply Br. at 2-3).

ESI also contends that Ullman will not be prejudiced by the length of the stay it seeks. While ESI acknowledges that there is no way to know exactly how long it will take for the Lynch matter to be fully resolved, ESI argues that a schedule is in place that requires "all relevant filings [to] be made by the fall of 2010, at the latest."  (<u>Id</u>. at 3, n.1).  ESI also claims that it is disingenuous for Ullman to argue that ESI is somehow purposefully trying to delay the resolution of the Lynch matter to increase NPA's risk of exposure when a company owned by Ullman that is involved in one of the MDL ERISA track cases "agreed to essentially the same scheduling deadlines as those proposed by defendants in <u>Lynch</u>."  (<u>Id</u>.)

In contrast, Ullman contends that ESI has failed to meet its burden to establish that this proceeding should be stayed.   In this regard, Ullman contends that ESI's motion fails to take into account his interest in bringing this matter to trial as well as the prejudice Ullman will suffer if his case is stayed indefinitely.  Ullman also argues that contrary to ESI's assertions, judicial

economy will not be served by staying this matter.  Ullman notes that the parties have already

engaged in extensive fact discovery as well as two rounds of dispositive motion practice.  He also

claims that the resolution of his case is in no way dependent on the outcome of the Lynch matter

and argues that ESI's declaratory judgment claim is likewise not dependent on the outcome in

Lynch.  As such, Ullman argues that the interests of judicial efficiency favor proceeding with this

matter, which is already three years old, now, instead of delaying these proceedings an indefinite

period of time, which increases the risk of prejudice given the possibility that evidence will be

lost, witnesses' recall of specific facts will diminish or one or more of the parties and/or

witnesses could die.

Further, Ullman argues that ESI has not established that it will suffer any hardship or

inequity if this matter proceeds to trial.  First, Ullman claims that "[t]here is no real threat of

wasted resources or moot claims" because his "arguments will not change, and ESI's defenses to

those arguments will not change, if Lynch is dismissed or resolves for $25 million."  (Ullman

Opp. Br. at 11).  Second, Ullman urges the Court to "consider ESI's consistent commitment to

proceeding with its claims for the past three years of litigation in this lawsuit, and the failure of it

to raise any indication of the stay issue until the eve of trial, in disposing of its claims of hardship

now."  (Id.)  Indeed, Ullman claims that the reasons offered by ESI for a stay are too speculative

because they require the Court to accept as true the following uncertain assumptions: (1) the

$25,000,000 valuation of Lynch, which Ullman argues was made in bad-faith, is accurate; (2) a

$25,000,000 verdict against NPA will be returned in the Lynch matter; (3) Ullman will not

prevail here at trial; and (4) ESI will prevail in its breach of warranty claim against Ullman.

6

Ullman also argues that ESI's proposed stay should be denied because it is too long. Ullman notes that the stay proposed by ESI is indefinite as ESI seeks to stay this litigation until the Lynch matter is resolved.  Ullman further argues that at a minimum such a stay would last for over a year because, despite the fact that the Lynch matter is over seven years old, the parties are "still arguing over pre-class certification discovery schedules" and the proposed class certification schedules do not even have the class certification issue being fully briefed until the end of October 2010.  Given the fact that ESI has not established a pressing need for the indefinite stay requested, Ullman argues that it would be an abuse of discretion for the Court to enter same.

## III.    Analysis

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936).  In determining whether a stay should be granted, the Court "must weigh competing interests and maintain an even balance."  *Id*. at 254-55.  As such, the Court considers whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy.  *See Id*.; *Ford Motor Credit Co. v. Chiorazzo*, 529 F.Supp.2d 535, 542 (D.N.J. 2008).  The Court also considers whether the two actions in question involve the same parties and issues and whether they are pending in the same court.  *Ford Motor Credit*, 529 F.Supp.2d at 542.

Further, in deciding whether a matter should be stayed, the Court is ever-mindful of the fact that "[t]he stay of a civil proceeding is an extraordinary remedy." *S.Freedman and Co. Inc. v. Raab*, Civil No. 06-3723 (RBK), 2008 WL 4534069, *2 (D.N.J. Oct. 6, 2008). It is the party seeking the stay that bears the burden of proof. Thus, "the supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward[.]" *Landis*, 299 U.S. at 255. Indeed, the proponent of the stay "must state a clear countervailing interest to abridge a party's right to litigate." *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 139 (D.N.J. 2004). Moreover, when the stay requested is of an "indefinite duration[,]" the party seeking same must establish a "pressing need" for the stay. *Landis*, 299 U.S. at 255.

Here, ESI seeks to stay the instant proceedings until a decision in the Lynch matter is rendered. As ESI acknowledges, there is no way to know when such a decision will be made. Further, while there is a proposed schedule that requires class certification briefing to be completed in Lynch by the end of October 2010, there is no guarantee that that schedule will not be extended. Moreover, while there is no way to know when the Court in Lynch will render its class certification decision, practical experience suggests that such a decision will at the earliest be made sometime in early 2011. In addition, for purposes of the requested stay, even after a class is certified in Lynch or certification is denied, the case must still proceed to trial and there is no way to accurately gauge how long that will take. Given these uncertainties, the length of the stay proposed by ESI, which at best will likely delay these proceedings for at least a year, is not known. Instead, ESI seeks a stay of indefinite duration. As such, ESI must establish a "pressing need" for the stay in order for the Court to properly exercise its discretion to grant same. *Landis*, 299 U.S. at 255. The Court finds that ESI has failed to demonstrate such a need.

8

ESI argues that the interest of judicial economy favors entering the requested stay because if this matter proceeds before Lynch is resolved then this Court and the parties may needlessly expend valuable resources only to learn that the verdict rendered in Lynch has mooted the Court and the parties' significant efforts.  Additionally, ESI contends that unless Ullman successfully proves that the claims being asserted in the CVS, Irwin, Fire Fighters, Hamilton and Lynch matters are not of the type for which ESI is entitled to indemnification under the SAPA, then even if Ullman is able to show that ESI has forfeited its right to indemnification by its bad faith efforts, Ullman would still not be entitled to the release of the escrowed funds because such a showing would not discharge Ullman of his indemnity obligations, but simply reduce his liability to ESI to the extent that he has been damaged by ESI's conduct.  Similarly, ESI argues that it will suffer a clear hardship if it is forced to spend considerable time and money litigating issues concerning the CVS, Irwin, Fire Fighters and Hamilton matters here before Lynch is decided because if the Lynch matter resolves for more than $25,000,000 then that judgment or settlement may effectively exhaust all of the escrowed funds, rendering moot all of the hard work engaged in by the parties and the Court.

The Court does not find ESI's arguments to be compelling.  First, the parties have been actively litigating this case for over 3½ years.  They have engaged in extensive fact discovery as well as two rounds of dispositive motion practice.  ESI has had ample time to raise the issue of a stay earlier in these proceedings, but did not.  Instead, the first time the Court even considered whether this matter should proceed to trial before the Lynch matter is resolved was during the hearing held on the parties' cross motions for summary judgment, which occurred in August

2009.[2]  The delay in raising the issue of staying these proceedings undermines ESI's claims that it is in the interest of judicial economy to do so at this time.  *See S. Freedman and Co.*, 2008 WL 4534069, at *3 (finding that defendants' "argument that it is in the interest of judicial economy to stay the proceedings in unconvincing" where defendants waited until less than one month before close of discovery on their claims to raise issue).  Indeed, if a stay were warranted for the reasons expressed by ESI, it would have been far more economic and efficient for such a stay to have been imposed before the Court and the parties expended considerable efforts presiding over and engaging in fact discovery as well as dispositive motion practice.

In addition, while the Court understands that an adverse judgment in Lynch could potentially exhaust all of the escrowed funds and thereby moot any disputes concerning the other four underlying matters, the Court finds that the likelihood of such an occurrence is too speculative to warrant staying these proceedings for that reason.  Indeed, at this time the Court finds that there is certainly no more reason to believe that Lynch will be resolved for more than $25,000,000 than there is to believe that Ullman will be successful in proving that he is not legally responsible under the SAPA to indemnify ESI for the types of claims at issue in the underlying matters.  A class has not yet been certified in Lynch and if the class certification

---

[2]While the District Court acknowledged during the hearing on the parties' cross motions for summary judgment that all courts attempt "to be most efficient with their use of judicial resources" and expressed the "practical concern" that an adverse judgment in Lynch could potentially absorb the entire $25,000,000 being held in escrow and thereby moot th parties' disputes concerning the other underlying matters, it did not stay this matter.  (*See* Aug. 18, 2009 Tr. at 68:8-21).  Instead, the District Court also indicated that it saw "no reason not to go forward with trial before the [Lynch] litigation is resolved."  (*Id*. at 67:20-21).  As such, the District Court instructed the parties to discuss whether they believed this trial should go forward before Lynch is resolved and advised them that the Court was available to try this matter.  (*Id*. at 68:19-23).  The parties obviously disagree over whether this matter should proceed or be stayed.

decision is favorable to the parties in this matter, than the likelihood of a judgment in Lynch that exceeds or even comes close to $25,000,000 is negligible.  Further, none of the other underlying matters have resolved for a figure even close to $25,000,000.[3]

Given the speculative nature of the risk that this Court and the parties will needlessly spend resources litigating issues that may be mooted by Lynch, the Court finds that ESI has failed to establish a pressing need for the stay requested.  The hardship it may suffer is simply too remote to support the indefinite stay of these proceedings at this juncture of the litigation.  The fact that absent a finding that Ullman is not legally responsible under the SAPA to indemnify ESI for the types of claims at issue in the underlying matters, he may not be entitled to the release of the escrow funds until after Lynch is decided, even if he can prove that ESI forfeited some of its right to indemnification by its bad faith efforts, does not change the Court's analysis.  Nor does the fact that the likelihood of potential prejudice to Ullman is tempered by the fact that the money at issue in this litigation is being held in escrow and continues to earn interest.  While the fact that the money is protected supports ESI's request for a stay, it is one of only many considerations of the Court.  Regardless of that fact, Ullman still has an interest in bringing his

---

[3]For example, while ESI submitted an indemnification claim for $25,000,000 for the Irwin, Fire Fighters and Hamilton matters, none of these cases were ultimately resolved for an amount even close to that figure: (1) the Irwin matter was dismissed (Ullman's Opp'n at 7); (2) the Fire Fighters matter settled for $76,000.00 (Compl. at ¶16; Answer at ¶16); and the Hamilton matter was dismissed (Countercl. and Third Party Cmplt. at ¶48).  Similarly, while CVS initially sought more than $16,000,000 from NPA, that matter was resolved for only $4.7 million. (Compl. at ¶19; Answer at ¶17).  While the Court recognizes that ESI may seek to be indemnified for its attorneys' fees and costs, in addition to the actual settlement amounts, even taking that into consideration, it would appear that the value of these underlying matters is considerably less than $25,000,000.

case to trial now.  In addition, there is the concern present in all litigations that the longer a case

lingers without a final resolution, the more likely it becomes that evidence will be lost.

Further, it is important to note that the burden is not on Ullman to show that he will be

prejudiced by the proposed stay.  Instead, it is ESI's burden to establish a pressing need for the

indefinite stay requested.  ESI has failed to meet that burden.  As previously stated, in light of the

significant efforts that the parties and the Court have already put into the litigation of this matter,

the Court is not convinced that the interest of judicial economy will be best served by staying this

case.  Similarly, the Court finds that the risk that the parties will unnecessarily spend time and

money litigating issues related to the CVS, Irwin, Fire Fighters and Hamilton matters that

ultimately become moot by a judgment entered in Lynch is too remote to support ESI's claim that

it, along with Ullman, will suffer a hardship or inequity if forced to proceed with this litigation

before the Lynch matter is resolved.  Under these circumstances, there simply is no pressing need

for the indefinite stay requested; while the likelihood of potential prejudice to Ullman may not be

severe, neither is the likelihood of hardship to ESI.  As such, the Court declines to exercise its

discretion to enter a stay in this matter.[4]

In coming to this conclusion, the Court has also considered the District of Rhode Island's

decision in *Pardee v. Consumer Portfolio Services, Inc.*, 344 F.Supp.2d 823, (D.R.I. 2004).

However, the Court finds *Pardee* to be distinguishable for several reasons.  For example, unlike

in *Pardee*, here, ESI never previously requested a stay of proceedings and certainly did not do so

at the outset of these proceedings.  In addition, unlike the plaintiff in *Pardee*, who sought a

_____

[4]At this time, the Court does not decide whether bifurcation of the parties' claims is
appropriate.  The parties may raise that issue with the District Court at a later date.

determination that the defendant failed to honor its indemnification obligations as set forth in the pertinent stock purchase agreement, here, Ullman is seeking a determination that he is not responsible for indemnifying ESI with respect to the CVS, Irwin, Fire Fighters, Hamilton and Lynch matters, along with the release of the $25,000,000 being held in escrow. Further, unlike in *Pardee*, the concern that a decision rendered by this Court will be inconsistent with findings made in Lynch is small because the scope of the indemnity provisions contained in the SAPA, which is the main issue to be addressed here, is not an issue to be litigated or decided in Lynch.

## IV.    Conclusion

For the reasons set forth above, ESI's motion to stay is DENIED. An appropriate Order follows.

Dated: February 1, 2010

                    s/Tonianne J. Bongiovanni
                    **HONORABLE TONIANNE J. BONGIOVANNI**
                    **UNITED STATES MAGISTRATE JUDGE**